CHARLES A. SEYMOUR, Appellant, *v.* ST. LUKE'S HOSPITAL, Respondent.

*Action by a real estate broker for commissions — effect of pleading a special contract to accept less — cancellation of the contract of sale after the purchaser had defaulted. — extension of time of payment given to him.*

A real estate broker, who had been employed by a corporation to procure a purchaser for a tract of land owned by it, at the price of $2,400,000, for which service he was to receive a commission of one per cent, after finding a person, Lewis S. Samuel, who was willing to purchase, but whom the corporation expressed some disinclination to accept, wrote a letter to the corporation, under date of May 31, 1893, in which he agreed, under the conditions substantially hereinafter stated, to accept $6,500, and subsequently — his proposition being accepted — gave a receipt for that sum under the following conditions, viz., as "being the amount within named as to be paid us on account our brokerage for sale of its site to Lewis S. Samuel, as per contract for the same, dated May 29th and made yesterday, and being all that is to be paid to us for such brokerage if such contract be not fulfilled." By its terms the contract of sale was to have been completely executed on January 2, 1895, but before that date a modification thereof was made by the parties to it (to which the real estate broker refused to consent), so that a payment of only $100,000 was required on that day, and the final conveyance was postponed until July 1, 1895. The purchaser failed to make any payment on January 2, 1895, and on January 26, 1895, the contract, by mutual consent of the parties thereto, the real estate broker not being consulted, was canceled.

On the trial of an action subsequently brought by the broker to recover commissions as upon a *quantum meruit,* the complaint was, on plaintiff's motion amended by setting up a special contract, set forth in the letter of May 31, 1893, and the court thereafter *directed* a verdict for the defendant.

*Held,* that the plaintiff could not, in view of such amendment of the complaint, insist, on an appeal from the judgment entered in the action, that his letter of May 31, 1893, was without consideration, and, therefore, not binding upon him;

That the plaintiff's rights were to be determined by the rules applicable to such letter under the terms of which he was bound to show that the contract between Samuel and the corporation had been performed, or that performance had been prevented by the corporation;

That when Samuel was in default on his contract on January 2, 1895, the corporation was not bound to sue him either for specific performance or for damages, but might regard the contract as at an end, in which latter event the right of the real estate broker to further commissions was lost;

That the cancellation of the contract of purchase by mutual consent of the parties simply released the right of action of the corporation against Samuel for damages, in which the real estate broker had no interest;

That the modification of the contract, Samuel not having paid on January 2, 1895, even the smaller sum to which the payment of that date was, by such modification, reduced, caused no injury to the real estate broker.

APPEAL by the plaintiff, Charles A. Seymour, from a judgment of the Supreme Court, in favor of the defendant, entered in the office of the clerk of the county of New York on the 21st day of January, 1897, upon the verdict of a jury rendered by direction of the court.

*Julius H. Seymour,* for the appellant.

*William B. Hornblower,* for the respondent.

RUMSEY, J.:

In the year 1893 the defendant, being the owner of a large parcel of land in the city of New York which it desired to dispose of, made an arrangement with the plaintiff by which he was to procure a purchaser of the premises at the price of $2,400,000, for which he was to receive the ordinary broker's commission of one per cent, or $24,000. The plaintiff succeeded in finding a person who was willing to make the purchase and he brought the parties together for that purpose. Before the contract of sale was finally completed, the defendant expressed some disinclination to accept the proposed purchaser, and by way of removing that hesitation the plaintiff entered into a special agreement with the defendant with regard to the payment of his commissions, which will be more particularly referred to later. After that agreement had been made, the defendant entered into a formal contract for the sale of its premises to one Samuel, who was the purchaser produced by the plaintiff. The contract was dated on the 29th of May, 1893, and seems to have been actually

executed on the first day of June. By its terms the defendant agreed to sell the property to Samuel for $2,400,000; $50,000 of which was paid at the time of the execution of the contract; $50,000 was to be paid on the 29th of July, 1893, and the contract was to be carried out between the parties on the 2d of January, 1895, by the payment to the defendant of $620,000 in money and securing to it the remainder of the purchase price by mortgages. upon several lots sold, in a manner which is not important in this connection. Just before the contract was entered into between Samuel and the St. Luke's Hospital, the plaintiff executed and delivered to the defendant a letter of which the following is a copy :

"OFFICE OF EVARTS, CHOATE & BEAMAN,                  ⎱
   "No. 52 WALL STREET, NEW YORK, *May* 31*st*, 1893. ⎰
"GEORGE M. MILLER,
         "*Chairman Committee of St. Luke's Hospital :*
   "DEAR SIR.— I agree to receive sixty-five hundred dollars ($6,500) brokerage for the sale of St. Luke's Hospital, and the balance of one per cent on $2,400,000 to be paid when the contract made with Lewis S. Samuel is fulfilled and the balance of purchase money, namely, $620,000 and bonds and mortgages to the extent of $1,680,000 are received and deeds delivered. In the event of the transaction not being fulfilled, I·waive all claims for further brokerage than $6,500.
         "Yours respectfully,
                 "CHARLES A. SEYMOUR & CO."

Immediately after the contract was executed, $6,500, being the first installment of his commissions, was paid to the plaintiff by the defendant, and he executed a receipt for it, of which the following is a copy :

"Received, New York, June 1st, 1893, from St. Luke's Hospital, $6,500, being the amount within named as to be paid us on account our brokerage for sale of its site to Lewis S. Samuel as per contract for the same, dated May 29th and made yesterday, and being all that is to be paid to us for such brokerage if such contract be not fulfilled. $6,500.
                 "CHARLES A. SEYMOUR & CO."

The contract between Samuel and the St. Luke's Hospital was never performed, but on the 26th of January, 1895, it was canceled by mutual consent, the plaintiff, however, not being consulted about it. After that had been done, the plaintiff brought this action to recover his commissions. An answer was interposed by the defendant upon which the case came to trial. The action, as originally brought, was upon a *quantum meruit*, and it was tried upon the complaint thus framed until the evidence had been closed. The defendant had set up the letter copied above as constituting the true agreement between the parties for the payment of the commissions, and at a certain stage of the trial, after the defendant had the case, this contract and receipt were read in evidence. After the testimony was closed the plaintiff moved for leave to amend his complaint by setting up a special contract set out in the letter of May thirty-first, which has been quoted above, and that amendment was finally allowed by the court. After the complaint had been thus amended, the court ordered a verdict for the defendant upon which a judgment was entered, from which this appeal has been taken.

The plaintiff insists, in the first place, that as he had been employed to sell this property for the defendant at the usual commission some time before the 31st of May, 1893, his contract of that date was without consideration and, therefore, is not binding upon him. However much weight might have been given to this contention had the pleadings remained in their original state, it is quite clear that, after the plaintiff had so amended his complaint as to bring his action upon this contract and sue for its enforcement, he is not at liberty to say that the contract is not one which can be enforced, or if he does say it and procures a ruling to that effect, it would put him out of court. That point, therefore, need not be any longer considered. The usual rule where a broker has been employed to effect a sale of property is, that if he finds a purchaser of sufficient responsibility, willing to take the property upon the terms stated, he has performed his contract and is entitled to his commissions. (*Duclos* v. *Cunningham*, 102 N. Y. 678.) The fact that either party has refused subsequently to carry out the contract does not affect the right to the commissions which have already accrued. (*Knapp* v. *Wallace*, 41

N. Y. 479; *Kalley* v. *Baker*, 132 id. 1.) But the plaintiff does not stand upon the usual contract of a broker, and his rights are not to be fixed by the rules applicable to that contract. He alleges that he made a special contract with the defendant, which has been set out in the former part of this opinion, and that by that contract his rights are fixed. That contract provides that the remainder of his commissions of $24,000, after the payment of the $6,500 which he has already received, is to be paid when the contract with Samuel is fulfilled and the remainder of the purchase money and bonds and mortgages received and the deed delivered ; and in the event of the transaction not being fulfilled, he waives all claim for further brokerage than $6,500. The same provision is substantially contained in the receipt which he signed at the time the $6,500 was paid to him. Under the terms of this agreement, before he can recover the remainder of his commissions, he is bound to show that the contract between Samuel and St. Luke's Hospital was performed, or that performance was prevented by the defendant. (*Hinds* v. *Henry*, 36 N. J. Law, 328; *Young* v. *Hunter*, 6 N. Y. 203; *Walker* v. *Tirrell*, 101 Mass. 257.) By the terms of the contract of sale the final performance was to have taken place on the 2d of January, 1895. It is conceded that on that day the defendant was ready to perform, and it has been determined that it had a good title which it could convey. (*Berenbroick* v. *St. Luke's Hospital*, 23 App. Div. 339.) But it appears, and is not disputed, that Samuel made no offer to perform on that day, nor, indeed, at any subsequent time, and after the second of January, when the performance was to have been made, he was, by the terms of the contract, in default. When that state of facts came to exist, the defendant had its choice either to bring an action against Samuel for specific performance of the contract, or to sue him for damages which it suffered by reason of his failure to perform, or to accept the act of Samuel as a forfeiture of the contract on his part. It was at liberty, so far as its own rights were concerned, to take any one of these courses which it deemed most expedient. It was under no obligation to Seymour to do any act whatever in the premises. Samuel had, by his failure to perform, forfeited his rights under the contract. The defendant had assumed no duty toward the plaintiff which required it to take any steps to compel the enforcement by Samuel of the agreement

which he had made.    It occupied toward him no position of confidence, but all that he could insist upon was that, if Samuel performed his contract, the defendant should be ready to perform its contract; and if that were done, or if the failure to do it occurred because of the neglect or the default of the defendant, Seymour had the right to the remainder of his commissions.    But the defendant was not called upon, after Samuel had forfeited his rights under the contract, to commence any action or involve itself in any litigation to enforce the forfeited contract for the benefit of Seymour.    The contract was at an end if the defendant saw fit to so regard it; and when it was at an end, Seymour's rights to recover the remainder of his commission were gone.    He had no interest in the contract itself.    He had no right to compel the performance of it by Samuel.    The contract being in this condition it was canceled by mutual agreement of the parties on the 26th day of January, 1895.

The plaintiff claims that this cancellation put it out of the power of the defendant to perform its contract and, therefore, his rights to his commissions had accrued.    But while the defendant at that time had the right to perform the contract if Samuel had been willing to do so, yet it could not perform it unless Samuel did, and Samuel having forfeited the contract and thereby shown his intention not to carry it into effect, the defendant was at liberty to accept the forfeiture, because the only other thing it could do was to bring an action to compel Samuel to perform.    All that was released by the cancellation was the right of the defendant to sue Samuel for his damages for failure to perform, and in that the plaintiff had no interest whatever, and he lost nothing by its release.    No rights of Samuel were changed by this cancellation.    He had no right.    As to him the contract was at an end already if the defendant chose to consider it so, and, therefore, in effect, so far as the right to enforce the contract was concerned, the cancellation amounted to nothing.

But it appears that on the 24th of October, 1894, while the contract was still in force, the defendant, at the request of Samuel, consented to modify it so that, instead of requiring the completion of the contract and delivering the deeds on the 2d of January, 1895, it agreed to accept a payment of $100,000 on that day and postpone the final conveyance until the 1st of July, 1895.    The plaintiff was asked to consent to this modification of the contract, but refused to

do it, and he insists now that, because of the modification, the defendant had lost the power to carry the contract into effect on the second day of January, and, therefore, the failure to perform was its fault, and he does not lose his rights on account of it. But the defendant had not lost the power to perform on the second of January. It was perfectly able to carry the contract into effect on that day, and if Mr. Samuel had offered on that day to do it there is no doubt that the transaction would have been completed. The difficulty is that Samuel not only was not ready to perform the entire contract on that day, but he made a forfeiture as to the modified contract. If, after the modification, Samuel had paid the $100,000, but for some reason had become unable to perform the remainder of the contract on the 1st of July, 1895, a very different question would have arisen between the plaintiff and the defendant as to the payment of these commissions. But as a matter of fact, Samuel forfeited the entire contract by his failure to perform that portion of it which he agreed to do, as it was modified, on the second of January. The extension of the time, while it was a modification of the contract, was one which caused no injury to the plaintiff, but rather tended to benefit him, because the indulgence to Samuel rendered it more likely that he would have been able to carry the entire contract into effect; and when, after the modification, he failed to make any effort to perform the contract as modified, his position with regard to it was precisely the same as it would have been had he failed to perform the whole contract, and entitle himself to a delivery of the deeds on the 2d of January, 1895. In each case the contract was at an end if the defendant chose to consider it so. The plaintiff surely can have no greater right to insist that the defendant violated its contract with Samuel to his hurt, because he forfeited the contract for his failure to perform a part of it on the 2d of January, 1895, than he would have done had he failed to perform the whole of it. It does not follow, nor is there any legal presumption, that because Samuel failed to pay $100,000 on the second of January, he would have paid $620,000 on that day had the defendant insisted upon it. But there was no such relation between the defendant and Seymour as to forbid it to make any reasonable change with regard to this contract, so long as the effect of it was not to put it out of the power of Samuel to perform it, or to increase his difficulty

FIRST DEPARTMENT, APRIL TERM, 1898.        [Vol. 28.

in performing it. It did not lose, because of its contract with Seymour, any right that it would have had to make such a reasonable modification of the terms of payment of the contract as would enable Samuel to carry it into effect. The only thing that it bound itself to do by its contract with Seymour, was not to do any act which would put it out of its power to carry a contract into effect when Samuel should offer to perform it, and if it continued able and ready to perform, so long as Samuel desired the performance to be had or was willing to perform, on his part, it did all that Seymour could require. The modification of the contract, therefore, did not affect the rights of the parties.

It is complained by the plaintiff that the case should have been sent to the jury, but a careful consideration of the evidence fails to show any disputed question of fact. Indeed, we are not able to discover that the plaintiff made any request to submit any question of fact to the jury. But it is quite likely that we have overlooked it in the forty odd pages of desultory conversation which is at the end of the case, where the exceptions are usually made sharply to appear. We cannot refrain from expressing our regret that, in a case of this importance, which turns solely upon questions of law, those questions should have been presented in a case so unscientifically made as this is. The reasons of counsel which are presented to the court at the close of the trial upon motions, are frequently not uninteresting, but they have no place in a case and exceptions which is intended to present sharply to the appellate courts the points which are raised and the rulings that are made. The place for these arguments is in the briefs, and, if they had been put into the briefs, it would have rendered the task of the court much easier.

No complaint is made as to the rulings of the court upon the admission or the rejection of evidence. Indeed, in view of the amendments which were made to the pleadings and the way in which the case was finally presented to the court, those questions were practically rendered of no importance.

Upon the whole case we are quite clear that there is no error, and the judgment should be affirmed, with costs.

VAN BRUNT, P. J., BARRETT, PATTERSON and McLAUGHLIN, JJ., concurred.

Judgment affirmed, with costs.