(152 App. Div. 447.)

## WILLIAMS v. ASHNER.

(Supreme Court, Appellate Division, Second Department. September 10, 1912.)

BROKERS (§ 63*)—RIGHT TO COMMISSIONS—CONTRACT.

   Plaintiff's assignors, having contracted to furnish tenants for certain real property for $800, tendered three persons as prospective tenants. A draft of the proposed lease had been drawn in advance of a meeting on December 16, 1909, which was the subject of negotiation on that day, when the negotiations were continued until December 31st. On that day a new party was substituted for one of the original tenants proposed, and, this being done, defendant's attorney insisted on a new contract with plaintiff's assignors, to the effect that, unless a lease with the tenants then proposed was actually executed and the deposit provided for actually made, plaintiff's assignors should not be entitled to a commission, and, this contract having been executed under seal, defendant's attorney announced that his client would not sign the lease and that the transaction was at an end. *Held*, in the absence of evidence of fraud, the contract was a bar to the broker's right to commissions.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 79, 81, 94–96; Dec. Dig. § 63.*]

   Thomas, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Kings County.

Action by Bennett Williams against Ida Ashner. From a judgment for defendant, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

See, also, 148 App. Div. 930, 133 N. Y. Supp. 1150.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Samuel D. Lasky, of New York City, for appellant.

Alfred D. Lind, of New York City, for respondent.

WOODWARD, J. The plaintiff's assignors concededly entered into an agreement with the defendant's husband, acting as her agent, under the terms of which said assignors were to be paid a commission of $800 for finding a lessee of certain premises in the borough of Manhattan. These assignors concededly produced parties ready, willing, and able to enter into a lease for the premises upon terms which appear to have been reached substantially between the parties on the 16th day of December, 1909, except that it appears that upon that date the negotiations were adjourned to permit of the drawing of an agreement for a surety for the money which was to be deposited under the terms of the lease. Defendant's husband, it appears, had practically agreed to become surety for the deposit, which aggregated nearly $5,000. It is conceded on the part of the respondent that under ordinary circumstances the plaintiff would be entitled to recover in this action, the lease not having been executed because of the refusal of the defendant to sign the same, although the plaintiff's assignors, on the refusal of defendant's husband to become surety for the deposit, had offered to waive the surety.

It is contended, however, that the ordinary rule is overcome by the agreements under seal which the plaintiff's assignors executed before the terms of the lease had been agreed upon. The plaintiff put in evidence these agreements, which are two in number, one executed on the 16th day of December, 1910, and the other on the 21st day of December of the same year. The first of these agreements is in the following language:

"In consideration of the premises and one dollar paid, it is agreed between Morris Damast, Joseph Ostroff, and Louis Billoon, and S. Ashner, that said Morris Damast, Joseph Ostroff, and Louis Billoon are not to receive any brokerage or commission whatever, unless a lease between said Ashner and Cohen and Klionsky is actually executed by both lessor and lessees, and the deposit therein provided for actually made, in which event only said Billoon, Damast, and Ostroff are to receive the aggregate sum of $800 in full of all such commission or brokerage. This memorandum relates to leasing of eight houses on E. 100th street, New York.

"Dated December 15, 1909."

The above is signed and sealed in the presence of a witness, and it seems to us that it constituted a valid waiver of any commission upon the transaction, unless it resulted in an actual execution of the lease and the deposit of the money which the lease provided for. This agreement was signed at the time the parties were together on the 16th day of December for the purpose of agreeing upon the terms

of the lease. The first draft of the proposed lease was drawn in advance of this meeting; but it appears from the evidence that it was the subject of negotiation during all of the afternoon of the 16th, and that at the close of the negotiation the matter was still open, though it is claimed that it had been agreed upon, with the exception of the making of a contract of suretyship for the money to be deposited by the plaintiff's assignors upon the making of the lease. At any rate, the meeting adjourned to the 21st day of December without the lease having been signed or the money deposited. On the date last above mentioned the parties again met, and the defendant's attorney insisted upon the execution of a new agreement in substantially the same language as the one above quoted; the only variations being in reference to a new party, who was to be a party to the proposed lease. This paper was duly executed under seal, as was the original, and, when this was done, defendant's attorney announced that his client would not sign the lease, and that the transaction was at an end.

It is not contended that the lease was signed, or that the money was deposited as contemplated by the lease, and the question before this court, upon this appeal, is whether the plaintiff, as the assignor of the brokers mentioned, is entitled to recover the commission, notwithstanding the fact that the lease was not executed and the money delivered. No fraud is alleged or proved. The plaintiff's assignors, while the proposed lessees were still negotiating over the terms of the lease, stipulated in a formal agreement, under seal, that they should not be entitled to their fees unless a lease was actually executed between certain named persons, these persons being "said Ashner and Cohen and Klionsky"; and it is not only conceded that no such lease was executed, but it appears from the record that the lease which it was proposed to execute was between Louis Cohen and Harry Gold and Ida Ashner, so that under the terms of the agreement of December 16, 1909, the defendant was certainly not liable. After the 16th came the proposal to change from Klionsky to Gold as one of the parties to the agreement, and there is no evidence whatever that there has been a substantial agreement as to the terms of a lease between Ida Ashner and Louis Cohen and Harry Gold at any time. The negotiations were between Ashner, as agent of his wife, and Cohen and Klionsky, and that transaction fell through; Gold being brought in in place of Klionsky. With this situation developed, plaintiff's assignors entered into a new agreement that they were not to be paid, except upon the consummation of the lease between Ida Ashner and Louis Cohen and Harry Gold.

There was clearly no liability, in law, up to the 21st day of December; for up to that time the parties whom the plaintiff's assignors had produced were not ready, willing, and able to sign the lease and make the deposit, and on the 21st of December a new party was introduced. The plaintiff's assignors were brokers. They had a perfect right to make any conditions they might deem proper for the payment of commissions to themselves, and we are of the opinion that the learned court at Trial Term properly disposed of this case.

It is not the province of the court to make contracts; it may only enforce those which have been made, where they are within the law.

The judgment and order appealed from should be affirmed, with costs.

JENKS, P. J., and CARR and RICH, JJ., concur. THOMAS, J., dissents.