FREDERICK ZITTEL & SONS, Respondent, *v.* LOUIS K. SCHWARTZ, Appellant.

First Department, June 4, 1920.

Principal and agent — employment to sell stock and property of corporation — written contract of sale procured by agent, construed — voluntary cancellation of contract by vendor and sale through another broker — when such cancellation does not defeat agent's right to commissions.— effect of voluntary release of vendee by vendor upon broker's right to commissions.

Where an agent employed by the defendant to obtain a purchaser for the stock of a garage corporation to which a lease of a garage being erected by the defendant was to be assigned, procured a customer who entered into a written contract for said purchase with the defendant wherein, among other things, it was agreed that if the building was not substantially completed by March fifteenth the purchaser should have possession with a reduced rent, and also that if it was not substantially completed by the tenth of July then the contract might be canceled at the option of the vendee and all moneys paid thereon should be repaid and the stock transferred should again become the property of the vendor, and it was further agreed that written notice of the option to cancel the contract should be sent by registered mail on the tenth of July, the completion of the building by March fifteenth was not of the essence of the contract, although a prior provision of the contract so declared, for the subsequent provisions impaired the force of the prior provisions.

Hence, where it appears that prior to July tenth, the date set for the optional cancellation of the contract by the vendee, the defendant by agreement with the vendee canceled the contract and made a sale to another vendee through another broker who received commissions therefor, the cancellation must have been deemed a voluntary act by the defendant and it did not deprive the plaintiff of his right to commissions for procuring the first customer.

The burden was upon the defendant to show the legal right of the first vendee to cancel the contract at the time the cancellation was made, before it can defeat the plaintiff's right to commissions.

If a vendor voluntarily releases a vendee from his contract which might have been enforced, the broker of the vendor may recover his commissions, and to defend against the broker's claim the vendor must at least show that his consent to the cancellation of the contract was a consent to a legal right in the vendee.

APPEAL by the defendant, Louis K. Schwartz, from a determination of the Appellate Term, first department, entered

in the office of the clerk of the county of New York on the 27th day of October, 1919, affirming a judgment of the City Court of the City of New York in favor of the plaintiff, and an order denying a motion to set aside the verdict and for a new trial made upon the minutes.

*J. Robert Rubin* of counsel [*Samuel J. Rosensohn* and *Milton Frank* with him on the brief], for the appellant.

*William Kaufman* of counsel [*Hugo S. Mack*, attorney], for the respondent.

SMITH, J.:

This is an action for commissions upon the sale of the stock of a corporation which involved the transfer of a lease of substantial value. The case has been twice tried. Upon the original trial the complaint was dismissed and judgment was directed for defendant upon the counterclaim. This was reversed by the Appellate Term. (173 N. Y. Supp. 383.) Upon the second trial the jury found for the plaintiff, both upon his cause of action and upon the defendant's counterclaim. This was affirmed by the Appellate Term, and from that affirmance this appeal is taken.

The defendant Schwartz apparently was the owner of the lease upon premises known as 219–223 West Seventy-seventh street in the borough of Manhattan. He had just organized a corporation known as the Wellsmore Garage, Incorporated. He had assigned, or was about to assign, to this corporation this lease. He owned all the stock of the corporation. He desired to sell the stock of this corporation which would carry the right of this lease, and the plaintiff was employed for that purpose. The terms that he first named were $30,000 as a first payment, and $16,500 per year as rent. The plaintiff, acting through one Allen as his agent, negotiated with the National Garage Company for this transfer, but the National Garage Company was unwilling to pay the amount named. He succeeded in bringing the parties together upon the 12th day of October, 1917. Negotions were had between them and terms were thereafter agreed upon and the formal contract signed upon the eighteenth day of October. Prior to that time Schwartz had a further talk with Allen representing

this plaintiff, by which it was agreed that the plaintiff should receive the $3,000 as and when Schwartz received his payments of the $25,000 from the National Garage Association as provided by this agreement. The National Garage Association made a payment of $7,500 and the plaintiff was paid $900. Thereafter, and upon April 9, 1918, by agreement between the National Garage Association and the defendant, the contract was canceled, and the defendant made the transfer to another vendee, which was accomplished through another broker, who received his commission therefor. The plaintiff demanded its full commissions from the defendant which were refused, and the defendant demanded of the plaintiff the return of the $900 paid as commissions upon the first payment of $7,500 and this was refused. At the time of the cancellation of the contract upon April 9, $7,500 was returned by defendant to the National Garage Association. The material parts of the contract which it is necessary to consider are as follows:

" Now, therefore, it is agreed:

" 1. The vendor agrees to and hereby does sell and set over unto the vendee all of the capital stock of the said Wellsmore Garage, Inc., under the terms and conditions hereinafter set forth.

" 2. The vendee hereby agrees to pay for said stock Twenty-five Thousand Dollars, payable as follows:

" Seventy-five Hundred Dollars in cash, upon the execution of this agreement, receipt whereof is hereby acknowledged.

" Eighty-five Hundred Dollars — Forty-two Hundred Fifty Dollars upon the occupancy of the vendee of such garage building, and Forty-two Hundred Fifty Dollars upon the substantial completion of said building. In the event that the building is substantially completed prior to March 15th, 1918, then the sum of Eighty-five Hundred Dollars shall be paid upon the occupancy of the said garage by the Wellsmore Garage, Inc., or the vendee hereunder.

" One note for Two Thousand Dollars, with interest at six per cent, payable six months after the said garage is substantially completed and delivered to the said Wellsmore Garage, Inc.;

" One note for Two Thousand Dollars, with interest at six per cent, payable twelve months after the said garage has

been substantially completed and delivered to the said Wellsmore Garage, Inc.;

" One Note for Twenty-five Hundred Dollars, with interest at six per cent, payable two years after the said garage has been substantially completed and delivered to the Wellsmore Garage, Inc.; and

" One note for Twenty-five Hundred Dollars, with interest at six per cent, payable three years after the said garage has been substantially completed and delivered to the Wellsmore Garage, Inc.

" 3. It is understood and agreed that until the completion of said building and the payments to be made hereunder, the said stock of the Wellsmore Garage, Inc., sold and set over, as provided in Paragraph ' 1 ' herein, shall be assigned in blank by the vendee and held by the vendor as collateral security for the payment of the aforesaid sums, to be returned to the vendee upon the payment of the last note required to be paid hereunder.

" 4. It is understood and agreed that substantial completion of said building on or before March 15th, 1918, is of the essence of this agreement.

" In the event that said building is not substantially completed by the 15th day of March, 1918, but is sufficiently completed for partial occupancy, then and in that event the vendor agrees that the Wellsmore Garage, Inc., ·may enter into possession and thereupon shall receive a reduction in rent from the 15th day of March, 1918, to the 15th day of July, 1918, of Six Hundred Eighty-seven and 50/100 Dollars per month, but from the 15th day of July, 1918, during the life of said lease, full rent shall be paid.

" 5. It is understood and agreed that in the event that the said garage building is not substantially completed by the 10th day of July, 1918, then, at the option of the vendee, this contract may be cancelled and all the moneys paid hereunder to the vendor shall be repaid and the stock transferred to the vendee shall be and become the property of the vendor. Written notice of the exercise of said option must be sent by registered mail on the said 10th day of July, 1918."

On March fifteenth the building was not substantially completed. The National Garage Company claimed its right

to cancel the contract at that time, which right was recognized by the defendant. The building and garage apparently was not being constructed by the defendant, but by a third party, so that there is no question as to any fault on the defendant's part in not having the building substantially completed on March fifteenth.

The claim of the plaintiff is that this contract gave the right of cancellation only upon July tenth, in default of substantial completion of the garage at *that time,* and that the cancellation upon April ninth was a voluntary act on the part of the defendant which cannot defeat the plaintiff's right to commissions.

The contention of the defendant is that under this contract the substantial completion of this building upon March fifteenth was made of the essence of the contract, and because of the fact that the garage was not substantially completed upon March fifteenth, the defendant's act in canceling the contract was not a voluntary act, but was only an acquiescence in the legal demand of the National Garage Company, and that under the plaintiff's contract to receive the twelve per cent commission only upon the payments as made, the plaintiff has established no cause of action.

The main question to be determined is the construction of this contract. The provision is that the building shall be substantially completed upon March 15, 1918, and that is declared to be of the essence of this agreement. If this provision stood alone in the contract, there is no question that the failure of substantial completion upon March fifteenth would justify the National Garage Company in canceling the contract. While there is no proof in the case to the effect that the building was not substantially completed upon that date, that fact is assumed throughout the case and neither the plaintiff nor the defendant can now question it. But the whole contract must be read together. The subsequent provisions of the contract providing for the entering into possession and the reduction of rent if the building be not substantially completed by the fifteenth day of March and the specific provision that if the building be not substantially completed upon the 10th day of July, 1918, then at the option of the vendee the contract may be canceled

and all moneys paid thereon be repáid and the stock transferred to the vendee to become the property of the vendor, and the specific provision requiring written notice of the option to cancel the contract to be sent by registered mail on said 10th day of July, 1918, to my mind largely impair the force of the provision earlier in the contract that the substantial completion upon March fifteenth is of the essence of the contract. There is no provision that the contract may be canceled if the building be not substantially completed upon that date, while the later provision specifies the right of cancellation if it be not substantially completed on July tenth. Meantime the National Garage Company could occupy the building if it were in shape to be occupied at a reduced rent. These alternative provisions would seem to nullify the earlier provision in the contract that the completion upon March fifteenth was of the essence of the contract, and the cancellation of the lease by agreement with the defendant upon April ninth was not a cancellation authorized by the contract. Perchance by July tenth, when the right of cancellation is specifically given, the building might have been substantially completed, so that the National Garage Company would have been without the right to cancel the contract. There is no proof in the case as to the condition of the building at the time of the cancellation. It might perhaps have been shown by the defendant that the building was in such a state of completion that it would have been impossible to have substantially completed the same by July tenth. In that case, in my judgment, the defendant would have been authorized to have consented to the cancellation of the contract at any time before July tenth, and this would not have amounted to a voluntary cancellation. Without such proof in the case, however, no justification is shown to the defendant to consent to the cancellation of this contract upon April ninth, and the giving of such consent must be deemed to have been a voluntary act which would not deprive the plaintiff of his right to commissions.

The fact that the defendant had other negotiations pending early in April for the transfer of the property to another vendee may or may not give color to the consent given to the cancellation of this contract upon April ninth. It is for

the defendant to show the legal right of the National Garage Company to the cancellation at that time before it can defeat the plaintiff's right to the commissions stipulated, and no such proof is given.

It is unnecessary to cite authorities to the proposition that if a vendor voluntarily releases a vendee from his contract, which might have been enforced, the broker of the vendor may recover his commissions. To defend against the broker's claim, the vendor must at least show that his consent to the cancellation of the contract was a consent to a legal right in the vendee. (*Colvin* v. *Post Mortgage & Land Co.*, 225 N. Y. 510; *Duclos* v. *Cunningham*, 102 id. 678; *Condict* v. *Cowdrey*, 139 id. 280.)

Under this construction of the contract it becomes immaterial to consider the legal effect of the claimed alteration in the brokerage contract made either before or after the consummation of the contract between the defendant and the National Garage Company.

Upon the facts as shown, the plaintiff is entitled to its commissions, and this, of necessity is a complete answer to the defendant's counterclaim. The determination should, therefore, be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, PAGE and MERRELL, JJ., concur.

Determination affirmed, with costs.