HARRIS WEINER, Appellant, *v.* ALEX INFELD, Respondent.

(Supreme Court, Appellate Term, Second Department, May-June Term — Filed August, 1921.)

Brokers — when real estate broker entitled to commissions — failure to pass title.

> A broker employed to sell real estate, in the absence of special agreement providing otherwise, is entitled to commissions when he produces a purchaser who is ready and able to buy upon the seller's terms.

> A broker and seller may agree that commissions shall not be paid unless title passes.

> An agreement that the broker shall not be entitled to recover commissions, although the failure to pass title be the fault of the vendor, will not be found unless it clearly appears from the agreement that such was the intention of the parties.

> Where in an action to recover a balance of a broker's commissions upon the sale of real estate, it is admitted that the title did not pass and there is a conflict in the evidence, it must be assumed on appeal from a judgment in defendant's favor, that the plaintiff agreed that the balance of his commissions should not be paid unless the title passed.

> Upon the closing day the intending purchaser stated that for lack of funds he could not carry out the contract and sought a cancellation. *Held,* that the vendor was relieved of his obligation to pay plaintiff and had a right to cancel the contract, and a judgment dismissing the complaint upon the merits, with costs, will be affirmed, with costs.

> The principles governing in actions to recover broker's commissions, stated.

APPEAL by the plaintiff from a judgment dismissing his complaint upon the merits, with costs, after a trial in the Municipal Court of the city of New York, third district, borough of Brooklyn, before the court without a jury. The action was to recover a balance of broker's commissions upon the sale of real estate.

Appellate Term, Second Department, August, 1921. [Vol. 116.

Herman S. Axelrod, for appellant.

Ira L. Rosenson, for respondent.

CROPSEY, J. In the absence of a special agreement providing otherwise a broker employed to sell real property is entitled to commissions when he produces a purchaser who is ready and able to buy upon the seller's terms. But the broker and the seller may make any different agreement as to the time when, or the contingency upon which, the former's commissions shall be paid. They may, of course, agree that the commissions shall not be paid unless title passes and may even agree that the broker shall not be entitled to recover although the failure to pass title be the fault of the seller. But this latter agreement will not be found unless the contract clearly shows it was the intention of the parties. *Colvin* v. *Post Mortgage & Land Co.,* 225 N. Y. 510, 516.

There was a conflict in the proof which, however, has been settled by the judgment for the defendant. Thus, the fact must be assumed to be that the plaintiff agreed that the balance of his commission should not be paid unless title passed. It is admitted that title did not pass. On the adjourned day for closing the buyer appeared and stated he did not have sufficient moneys to carry out the contract and could not do so, and thereupon sought to secure its cancellation. And on the same day a formal cancellation was executed, the seller returning a part of the deposit as a further consideration therefor. These facts present the legal questions that must be considered. Has the plaintiff the right to recover the balance of his commissions? Does the cancellation of the contract between the buyer and defendant make any difference?

Under the facts as established by the judgment the

passing of title was a condition precedent to the broker's right to recover the balance of his commissions. And concededly that condition has not been performed. Hence if nothing else appeared, the failure of performance of that condition would defeat recovery. But in all contracts there is an implied undertaking by each party that he will not do anything to prevent the other party from carrying out the agreement on his part; and a party cannot insist upon a condition precedent if he has prevented its performance, for he is then precluded from asserting it as a defense to an action upon the contract. *Young* v. *Hunter,* 6 N. Y. 203, 207; *Patterson* v. *Meyerhofer,* 204 id. 96, 100. And this includes doing anything that prevents the other party to a contract from earning his fees or agreed compensation. *Zadek* v. *Olds, Wortman & King,* 166 App. Div. 60, 63, 64; *Carns* v. *Bassick,* 187 id. 280, 282, 283. So a broker can recover his commissions though the condition upon which they were to be payable has not been performed, if the failure of performance was due to the act, omission or default of his employer. *Fuller* v. *Bradley Contracting Co.,* 183 App. Div. 6, 20; *Booth* v. *New Process Cork Co.,* 196 id. 942.

If a broker's right to commissions be contingent upon title passing, and the failure to pass title be due to the refusal of the buyer to take or to any reason that did not involve the action or default of the seller, the commissions have not been earned. *Larson* v. *Burroughs,* 131 App. Div. 877; *Fittichauer* v. *Van Wyck,* 92 N. Y. Supp. 241; *Condict* v. *Cowdrey,* 139 N. Y. 273, 280. But if the seller be at fault, and if he has done something that has prevented title passing, the rule is different. Then his act, being in violation of his implied undertaking not to do anything to deprive the broker of his commissions, eliminates the

Appellate Term, Second Department, August, 1921. [Vol. 116.

necessity of the condition precedent being performed and precludes the seller from asserting such non-performance, and the broker is entitled to recover. *Colvin* v. *Post Mortgage & Land Co.,* 225 N. Y. 510, 517, and cases already cited. Of course, the failure of the seller to complete the contract would entitle the broker to his commissions. And the same result would follow if the failure to carry out the contract be due to a defect in the seller's title. *Morgan* v. *Calvert,* 126 App. Div. 327; and see *Larson* v. *Burroughs, supra,* 878. The seller is properly held to be responsible for such a situation. He is presumed to know whether he has title, and if he employs a broker to sell what he does not own he does, not relieve himself from liability for commissions merely by making them payable in the event of title passing, if the failure to pass title be due to defects in it. If the seller would protect himself from liability for commissions under such circumstances, he should make a contract with the broker expressly covering them.

The right of a broker selling real property, to his commissions, though by special agreement they be payable only if title passes, if the failure to close be due to the seller, is emphasized by the rule applicable to cases involving commissions for procuring a loan upon real property. In the latter cases the broker is not entitled to his commissions upon producing a lender, although he be able and ready to make the loan sought, and in fact contracts so to do. The loan must actually be made before the commissions become payable. *Crasto* v. *White,* 52 Hun, 473; *Ashfield* v. *Case,* 93 App. Div. 452; *Duckworth* v. *Rogers,* 109 id. 168; *Holliday* v. *Roxbury Distilling Co.,* 130 id. 654, 656. But if the loan does not go through because of the acts or default of the borrower, he is liable to the broker. *Holman* v. *Patten,* 227 N. Y. 22.

And upon the sale of real property, the same result follows where the seller cancels his contract with the buyer before there has been any default. *Zittel & Sons* v. *Schwartz*, 192 App. Div. 353, 358, 359. The case just cited suggests (p. 358) that a cancellation might be had before there was a default and the seller not be liable, but that was not involved in the decision made and we think that is not the rule. In fact, the same case says (p. 359): "To defend against the broker's claim, the vendor must at least show that his consent to the cancellation of the contract was a consent to a legal right in the vendee." How can there be such a right in the vendee if there has been no default under the contract? The implied obligation of the seller not to do anything to prevent the broker's commissions from becoming payable casts upon the former the duty of keeping the contract alive, so far as he may do so, until the closing date. He has fixed the time for performance and must give the buyer that time. If the contract between the buyer and seller be cancelled before the law day the question whether the buyer would have defaulted on the latter day would be full of speculation. We think that a cancellation before the closing date prevents the performance of the contract by terminating it before there has been any breach and making it impossible for it to be carried out. Under such circumstances the broker has the right to his commissions.

As a default by the buyer relieves the seller from liability for commissions, the fact that though the buyer has defaulted, he at a later date is willing to perform, does not change the situation. The seller is not then obliged to do so; and he may cancel the contract without becoming liable for commissions. *Van Norman* v. *Fitchette*, 100 Minn. 145, 149. In the case just cited a broker sued for his commissions. They

Appellate Term, Second Department, August, 1921.   [Vol. 116.

were payable only upon completion of the contract. The buyer refused to perform although the seller was ready.   Later, the buyer placed the contract on record and the seller sued to remove the cloud on title.   The buyer answered, and sought specific performance.   The seller then refused to complete.   Holding that the broker was not entitled to recover, the court said (p. 149): "All that appellant (broker) can claim is that during the life of the contract respondent should ever be ready, willing and able to carry out its terms.   The relation of the parties is not changed by the fact that respondent brought the action to clear a cloud from the title and that the company (buyer) offered to perform.   At that time several months had elapsed, the conditions may have entirely changed and respondent was then under no legal obligation to the company to complete the contract.   The company was in default, had no legal claim against respondent and had no right, title or interest in the land."

The language just quoted seems to point out the correct rule.   The seller may not cancel the contract while it still has life.   If he does he breaches his obligation to the broker.   But when the contract has been broken by the buyer and no longer exists, the seller may cancel it, or, to put it more accurately, may cancel or compromise whatever rights, if any, grow out of it.   Where the contract has been broken by the buyer the only right that then exists is one in the seller to recover damages for its breach or to seek specific performance.   But he is not obligated to take either of these affirmative actions for the benefit of the broker.   He owes the latter no such duty.   *Seymour* v. *St. Luke's Hospital,* 28 App. Div. 119.   And though the buyer might possibly go into equity asking specific performance notwithstanding his default, he would not have any *right* to such relief, and would, at most,

be seeking a discretionary favor. The buyer being in default, the seller is not obliged to wait indefinitely for him to take such action but may seek to relieve himself of such a possibility by effecting a cancellation of the contract.

A cancellation following a default by the seller does not affect the situation created by his default. Being at fault, and having prevented performance, the seller is liable, and the subsequent cancellation of the contract works no change. *Myers* v. *Buell,* 142 Ill. App. 467.

It is necessarily implied in all that has been said, that if the seller acts with bad faith and helps to bring about the buyer's default he is liable for the broker's commissions because the failure of the performance of the condition precedent would then be due to his act.

Nothing that has been said conflicts with the holding in *Williams* v. *Ashner,* 152 App. Div. 447. There the broker's contract was construed to be an agreement that if the lease was not signed, no matter what the cause (fraud excepted), the broker was not to get his commissions, and so upon this construction of the contract the arbitrary refusal of the lessor to sign did not aid the broker. In *Pinkerton* v. *Hudson,* 87 Ark. 506, 510, it is held that though a buyer has refused to complete, without fault of the seller, it is the latter's duty to sue the buyer and failing to do that he is liable to the broker though the commissions were payable only after the property was sold and the money received. This conflicts with the rule stated in *Seymour* v. *St. Luke's Hospital, supra,* and we think does not state the correct measure of the seller's duty.

In the case at bar, the buyer defaulted. He refused to complete the contract. Thereupon the defendant

was relieved from his obligation to pay the plaintiff, and he had the right to cancel the contract with the buyer.

The judgment should be affirmed, with twenty-five dollars costs.

KELBY and LAZANSKY, JJ., concur.

Judgment affirmed.